# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

No. 14-cv-9323 (RJS)
_____

## KOYA ABE,

Plaintiff,

VERSUS

## NEW YORK UNIVERSITY

Defendant.

_____

OPINION AND ORDER
March 30, 2016

_____

RICHARD J. SULLIVAN, District Judge:

For nearly six years, Plaintiff Koya Abe ("Plaintiff"), a represented former employee of New York University ("NYU" or "Defendant"), has been embroiled in at least eight lawsuits in a host of venues against Defendant and many of its administrators, deans, faculty, and staff.  Among these is an action filed in 2010 in New York State Supreme Court alleging discrimination and retaliation claims against Defendant and eight of its current and former employees (the "State Action") under the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107(1), (7) ("NYCHRL"). Notwithstanding the substantial time and resources expended by all parties in the State Action – which has been prolonged largely as a result of Plaintiff's own tactics – Plaintiff nevertheless brings this suit (the "Federal Action"), alleging claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII") ("Counts I–III"), the Age Discrimination in Employment Act of 1957, 9 U.S.C. § 621 *et seq.* ("ADEA") ("Count IV"), the New York Labor Law §§ 198, 215, 663 ("NYLL") ("Count V"), and the Employee Retirement Income Security Act, 29 U.S.C. § 1140 ("ERISA") ("Count VI") (Doc. No. 12 ("FAC")), largely based on the same facts and circumstances underlying the State Action.

Now before the Court is Defendant's motion to dismiss Plaintiff's First Amended Complaint.  For the reasons that follow, the motion is granted.

I. Background[1]

A. Facts

Defendant is a private university in New York City. From 2000 until 2009, Plaintiff was employed by Defendant as a member of its adjunct faculty. (FAC ¶¶ 17–18.) Plaintiff held two distinct positions, one involving teaching art courses (the "teaching position") and the other involving maintenance of a photographic laboratory facility (the "laboratory position"). (*Id.* ¶ 18.)

Plaintiff alleges that, while an employee, he was subjected to unequal treatment and discrimination based on his race, national origin, and age, and in retaliation for his complaints of discrimination. (*Id.* ¶¶ 17, 20, 25.) In 2004, Plaintiff began filing internal complaints with NYU officials regarding these discriminatory practices. (*Id.* ¶ 26.) He filed a charge with the EEOC in 2005 and brought suit alleging discrimination and retaliation against Defendant in 2006. (*Id.* ¶¶ 26–28.) The parties settled that action in 2007. (*Id.* ¶ 29.) That same year, Defendant also released some wages that had been withheld from Plaintiff from 2001 through 2006. (*Id.* ¶ 27.)

Plaintiff alleges that following the 2007 settlement, Defendant and its employees continued to subject him to discriminatory treatment based on his race, age, and

national origin (*id.* ¶¶ 30–36, 37–42, 47, 50–52), and that his supervisor, Nancy Barton, and other NYU administrators orchestrated a scheme to "conclusively retaliate against" him for his complaints of discrimination (*id.* ¶¶ 46, 121). For instance, Plaintiff claims that in 2007 and 2008, Barton directed her subordinate to tell Plaintiff that his wages were limited to $31.45 per hour, when he in fact was entitled to $58 per hour. (*Id.* ¶¶ 47, 103–04, 126, 221, 241.) Plaintiff further asserts that Defendant failed to contribute amounts owed to Plaintiff's employee benefit plan (*id.* ¶ 237) and continues to withhold a significant portion of his earned wages and retirement benefits despite his demands (*id.* ¶¶ 47, 103, 221, 225). Plaintiff also claims that, due to Defendant's deliberate concealment, he was unaware of the pay rate and benefits that he was actually owed until 2014. (*Id.* ¶¶ 46, 126, 228, 241.)

On May 13, 2009, Defendant cut Plaintiff's hours and lowered his pay for the laboratory position. (*Id.* ¶¶ 55–56.) The next day, on May 14, 2009, Plaintiff was terminated from the teaching position. (*Id.* ¶¶ 56, 60.) Plaintiff's termination and demotion prompted him to complain to at least seven high-level NYU administrators about his treatment in the ensuing months (*id.* ¶¶ 62–81), to file two additional charges with the EEOC on May 25, 2009 and June 12, 2009, and to file internal complaints within his union (*id.* ¶¶ 67–68, 71–72). Defendant formally investigated Plaintiff's complaints of discrimination and denied him relief in what Plaintiff characterizes as a "sham grievance procedure" whose "outcome" was "predetermined." (*Id.* ¶¶ 82–84, 89.) On August 10, 2009, Plaintiff was terminated from his laboratory position. (*Id.* ¶ 19.)

Plaintiff alleges that Defendant cut his hours, decreased his pay, and terminated him from the two positions due to his race, national origin, and age, and in retaliation for his complaints of discriminatory

---

[1] The following facts are taken from the First Amended Complaint, filed on April 9, 2015. (FAC.) In ruling on the motion, the Court has also considered Defendant's memorandum of law (Doc. No. 28 ("Mem.")), Plaintiff's opposition (Doc. No. 32 ("Opp'n")), and Defendant's reply (Doc. No. 33 ("Reply")), and the accompanying declarations (Doc. Nos. 29–31). Additionally, the Court takes judicial notice of documents filed and decisions rendered in the State Action and of administrative matters involving Plaintiff before government agencies such as the National Labor Relations Board ("NLRB") and Equal Employment Opportunity Commission ("EEOC"). *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424–25 (2d Cir. 2008).

treatment. (*Id.* ¶¶ 3–4, 111, 138, 140, 188–89.) Since Plaintiff's termination, he has reapplied unsuccessfully to work for Defendant several times (*id.* ¶ 97) and has been unable "to find comparable employment" (*id.* ¶¶ 130, 247).

## B. Procedural History

In 2010, Plaintiff brought suit in the New York State Supreme Court against Defendant alleging, among other things, that it engaged in unlawful discriminatory practices based on Plaintiff's race, national origin, and age, and had unlawfully retaliated against Plaintiff under NYCHRL. *Koya Abe v. N.Y. Univ.*, No. 105985/10 (N.Y. Sup. Ct. June 11, 2010) ("State-Court Doc."). Plaintiff also brought six other separate suits against Defendant's employees and attorneys, which have either been consolidated with the State Action or dismissed.[2] In addition to Defendant, the State Action currently has eight individual defendants: David McLaughlin, Defendant's provost; Nancy Barton, Plaintiff's direct supervisor; Ken Castronuovo, administrator of Defendant's art department; Joseph Giovanelli, an administrator at NYU's Steinhardt School; Roger Ho, the Steinhardt School's director of human resources; Mary Brabeck, dean of the Steinhardt School; and Defendant's attorneys Barbara Cardeli-Arroyo and Cathleen Dawe; in addition, Plaintiff has recently moved to add Terrance J. Nolan, Defendant's general counsel, and John Sexton, Defendant's former president, as additional individual defendants in the State Action. (State-Court Doc. No. 727.)

While several of Plaintiff's claims have been dismissed in state court, those brought against Defendant under NYCHRL survive. (*Id.*) To date, the parties in the State Action have engaged in extensive motion practice and appeals, produced voluminous discovery, and conducted numerous depositions. Defendant represents, and Plaintiff does not dispute, that it has produced thousands of pages of documents in response to hundreds of document requests and hundreds of interrogatories from Plaintiff. (Mem. 21.) With respect to the numerous appeals filed in the State Action, it should be noted that these appeals – which have contributed to the protracted nature of the litigation – were brought by Plaintiff, and were ultimately denied by the Appellate Division of the New York State Supreme Court, First Department, in May, June, and July 2014 (State-Court Doc. Nos. 33, 54, 59), and July 2015 (*id.* No. 527). Furthermore, during the course of prosecuting the State Action, Plaintiff has experienced numerous setbacks, including, *inter alia*, the quashing of multiple subpoenas on the grounds that the discovery sought by Plaintiff was both irrelevant and redundant, and the denial of multiple motions to compel the production of evidence, to sanction Defendant, and to disqualify Defendant's attorneys. (*Id.* Nos. 11, 192, 387, 389, 420, 544, 641.)

On August 28, 2014, the EEOC issued Plaintiff his "right-to-sue" letter under Title VII and the ADEA (FAC ¶ 109), and on November 24, 2014, Plaintiff commenced the Federal Action. (Doc. No. 1.) The Federal Action initially included four counts, which alleged violations of Title VII and the ADEA. (*Id.*) On March 20, 2015, Defendant filed a pre-motion letter indicating its intent to seek dismissal of Plaintiff's claim on abstention grounds pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). (Doc. No. 6.) A few weeks later, on April 9, 2015, Plaintiff filed

---

[2] *See Abe v. Castronuovo*, No. 101487/10 (N.Y. Sup. Ct. Mar. 18, 2010); *Abe v. Barton*, No. 101488/10 (N.Y. Sup. Ct. Mar. 18, 2010); *Abe v. Barton*, No. 113150/10 (N.Y. Sup. Ct. Nov. 24, 2010); *Abe v. Cohen*, No. 152312/12 (N.Y. Sup. Ct. June 18, 2012); *Abe v. Giovanelli*, No. 152780/12 (N.Y. Sup. Ct. Aug. 17, 2012); *Abe v. Tarter Krinsky & Drogin LLP*, No. 156528/13 (N.Y. Sup. Ct. Sept. 27, 2013).

an amended complaint adding Count V, which alleges violations of NYLL, and Count VI, which alleges violations of ERISA. On July 21, 2015, Defendant filed a motion to dismiss Plaintiff's NYLL and ERISA claims for failure to state a claim, and a motion to dismiss Counts I–V on abstention grounds, pursuant to *Colorado River*. (Doc. No. 27.) The motion became fully briefed on August 28, 2015. (Doc. No. 33.) There has been no other progress in the Federal Action other than the instant motion.

For the reasons set forth below, the Court grants Defendant's motion to dismiss the ERISA cause of action for failure to state a claim, grants Defendant's motion to dismiss claims brought under Title VII and ADEA on abstention grounds, and dismisses Plaintiff's NYLL claim for lack of subject-matter jurisdiction. Because this Court has exclusive jurisdiction over Plaintiff's claim brought under Section 510 of ERISA, *see* 29 U.S.C. § 1132(e)(1), this claim cannot be addressed as part of Defendant's abstention motion, and therefore, will be addressed first.

## II. ERISA CLAIM

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 570.

Plaintiff's ERISA claim, which he admits is "unclear" (Opp'n 15), effectively asserts two separate ERISA causes of action. First, Plaintiff alleges that he was "terminated by [Defendant] in order to deprive [Plaintiff] of retirement benefits due" on August 10, 2009 in violation of Section 510 of ERISA, codified at 29 U.S.C. § 1140. (FAC ¶ 251; *see also id.* ¶ 245 (alleging that Defendant "intentionally terminated [Plaintiff] because [Defendant] sought to prevent subsequent retirement benefits from vesting")). Second, Plaintiff avers that Defendant failed to make a full contribution of ERISA-protected benefits to him in 2008 and 2009 while he was still employed by Defendant. (*Id.* ¶¶ 103, 235, 237, 241.) Although Plaintiff does not even attempt to cite the specific statutory provision on which his claim is based, the Court construes Plaintiff's second ERISA claim as one for recovery of unpaid benefits under Section 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B). The Court analyzes each ERISA cause of action separately.

### A. Termination of Employment in Violation of Section 510

Defendant argues that Plaintiff's claim brought pursuant to Section 510 is time-barred. (*See* Mem. 8–9.) "Although the statute of limitations is ordinarily an

affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n. 12 (2d Cir. 2014).

Congress did not specify the statute of limitations in Section 510 of ERISA. *Sandberg v. KPMG Peat Marwick, LLP*, 111 F.3d 331, 333 (2d. Cir. 1997). Nevertheless, pursuant to longstanding Supreme Court and Second Circuit precedent, the Court applies the presumption that it should borrow the limitations period of the state cause of action that most closely mirrors the federal cause of action. *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 33–34 (1995); *see also Sandberg*, 111 F.3d at 333. In New York, it is settled law that a wrongful-termination claim under Section 120 of the New York Workers Compensation Law is the state cause of action most analogous to Section 510 of ERISA; accordingly, federal courts in New York have routinely imputed Section 120's two-year statute of limitations to claims brought under Section 510 of ERISA. *Sandberg*, 111 F.3d at 333; *see also Gabel v. Richards Spears Kibbe & Orbe, LLP*, 615 F. Supp. 2d 241, 244 (S.D.N.Y. 2009). Furthermore, it is settled law that the statute of limitations for Section 510 of ERISA accrues when the employer terminates an employee and communicates that termination, and not upon the actual deprivation of benefits. *Williams v. AAA S. New England*, No. 13-cv-855 (VB), 2015 WL 864891, at *3 (S.D.N.Y. Mar. 2, 2015); *Weir v. Holland & Knight*, No. 05-cv-9358 (LTS) (AJP), 2007 WL 1815494, at *2 (S.D.N.Y. June 25, 2007).

Having concluded that the two-year limitations period applies, the Court finds that Plaintiff's claim is clearly time-barred. Obviously, November 24, 2014 – the day on which Plaintiff filed his complaint[3] – is more than two years after August 10, 2009 – the date that Plaintiff's termination was communicated to him (FAC ¶ 19). Moreover, Plaintiff has offered no persuasive argument for the application of equitable tolling of his claim. (*See* Opp'n 18.) Since Plaintiff was aware of his termination on August 10, 2009, he was plainly not "prevented in some extraordinary way" from learning of his claim for wrongful discharge. *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (recognizing that "equitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights" (citations and quotation marks omitted)).

Therefore, Plaintiff's ERISA Section 510 claim arising out of his termination was brought long after the limitations period ended, and must accordingly be dismissed.

### B. Withholding of Benefits Due Under ERISA Plan

Although Plaintiff fails to cite the relevant statutory provision, the Court construes his allegations that he was deprived of benefits owed to him to raise a claim pursuant to Section 502(a)(1)(B) of ERISA, which authorizes a plan participant or beneficiary to bring a civil cause of action to recover benefits due under an employee benefit plan. *See Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006) (recognizing that a claim seeking money damages for unpaid benefits under an ERISA-administered plan falls under

---

[3] The Court assumes for the purposes of this motion that Plaintiff's ERISA claims, which were first asserted in his FAC, "relate back" to the original complaint, *see Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006), and it thus assumes that November 24, 2014, is the operative date for calculating the statute of limitations.

Section 502(a)(1)(B)). Nevertheless, the Court concludes that Plaintiff has failed to allege a necessary prerequisite for a Section 502(a)(1)(B) claim – namely, satisfaction of ERISA's exhaustion requirement.[4]

As the Second Circuit has made clear, ERISA mandates "that all benefit plans provide for carrier review." *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006). Therefore, a plaintiff may not bring an action to recover benefits under ERISA until he has exhausted the administrative remedies available under the plan. *Novella v. Westchester Cty.*, 661 F.3d 128, 135 n.10 (2d Cir. 2011); *Paese*, 449 F.3d at 443; *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993). Although failure to exhaust administrative remedies is an affirmative defense, *Paese*, 449 F.3d at 446, courts routinely dismiss ERISA claims brought under Section 502(a)(1)(B) on a 12(b)(6) motion to dismiss where the plaintiff fails to plausibly allege exhaustion of remedies, *see, e.g.*, *Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 292–93 (E.D.N.Y. 2014); *Kesselman v. Rawlings Co., LLC*, 668 F. Supp. 2d 604, 608 (S.D.N.Y. 2009); *Am. Med. Ass'n v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 450 (S.D.N.Y. 2008); *Egan v. Marsh & McLennan Cos., Inc.*, No. 07-cv-7134 (SAS), 2008 WL 245511, at *10 (S.D.N.Y. Jan. 30, 2008).

Here, Plaintiff pleads no facts suggesting any effort to exhaust the remedies available through his ERISA administrative plan. *See Egan*, 2008 WL 245511, at *10 (dismissing claim for ERISA benefits where "Plaintiff

makes no allegations whatsoever that he exhausted any or all administrative remedies available to him under the [ERISA-administered plans], and the Court cannot find any allegation from which it can infer that he did so before filing suit"). And while it is true that courts may waive the exhaustion requirement if a plaintiff "makes a 'clear and positive showing' that pursuing available administrative remedies would be futile," *Thomas v. Verizon,* No. 02-cv-3083 (RCC) (THK), 2004 WL 1948753, at *4 (S.D.N.Y. Sept. 2, 2004) (citations and quotation marks omitted), Plaintiff has pleaded no facts to show that "rejection of [his] challenge" by those administering his ERISA plan would be "a foregone conclusion," *Saladin v. Prudential Ins. Co. of Am.*, 337 F. App'x 78, 80 (2d Cir. 2009).

Thus, the Court dismisses Plaintiff's claim for unpaid benefits under Section 502(a)(1)(B).[5]

## III. MOTION TO DISMISS ON ABSTENTION GROUNDS

The Court next turns to whether it should abstain from Counts I–IV, Plaintiff's

---

[4] By contrast, there is no exhaustion requirement with respect to Plaintiff's claim that Defendant unlawfully terminated him in violation of Section 510, since "ERISA's exhaustion requirement applies when a claim is plan-based, as opposed to one that alleges statutory violations." *Fernandez v. Wells Fargo Bank, N.A.*, No. 12-cv-7193 (PKC), 2013 WL 3465856, at *6 (S.D.N.Y. July 9, 2013).

[5] Plaintiff avers for the first time in his opposition brief that he is entitled to equitable relief for Defendant's "breach of fiduciary duty" under Section 502(a)(3). (*See* Opp'n 16.) It is hornbook law that Plaintiff may not amend his pleading through his opposition brief, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998), and the Court has no obligation to liberally construe a counseled plaintiff's complaint, *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 370 (S.D.N.Y. 2012). In any event, to the extent Plaintiff's vague and conclusory allegations of fraud and concealment could be read to raise a fiduciary claim independent of his unpaid benefits cause of action (FAC ¶¶ 239, 241–42, 245–46, 248), the Court concludes that he fails to plead factual matter sufficient to state a plausible claim, *see Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (ERISA plaintiff claiming fiduciary breach must make sufficient non-conclusory allegations to "give rise to a reasonable inference" that defendant engaged in misconduct).

Title VII and ADEA claims, in light of the long-running State Action. The Supreme Court has held that in certain "exceptional circumstances," a federal court "may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources." *Niagara Mohawk Power Corp. v. Hudson River–Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colorado River*, 424 U.S. at 817–18). In deciding whether to abstain pursuant to *Colorado River*, courts consider six factors:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Id.* at 100–01 (quoting *Woodford v. Cmty. Action Agency of Greene Cty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001)). As an additional factor, the Supreme Court has "found 'considerable merit' in the idea 'that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*.'" *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir. 1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 17 n.20 (1983)). "[N]one of these factors alone is necessarily determinative" of the abstention analysis, *Niagara Mohawk*, 673

F.3d at 101, but the "balance [must be] heavily weighted in favor of the exercise of jurisdiction," *id.* at 100 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16), and if "a *Colorado River* factor is facially neutral, that is a basis for retaining jurisdiction, not for yielding it," *id.* (citation and quotation marks omitted). The Court therefore considers each *Colorado River* factor and, mindful of the standard that "[o]nly the clearest of justifications will warrant dismissal," *Colorado River*, 424 U.S. at 818–19, concludes that abstention is warranted here.

A. The State and Federal Actions Are Parallel With Respect to Counts I–IV

"Before engaging in the six-factor analysis, a court must make a threshold determination that the federal and state court cases are 'parallel.'" *Dalzell Mgmt. Co. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 597 (S.D.N.Y. 2013) (citing *Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)). Federal and state proceedings are "parallel" for abstention purposes "when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997). "Perfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012).

Here, Counts I–IV are clearly parallel to Plaintiff's pending NYCHRL claims before the state court, which involve both Plaintiff and Defendant and center around the same series of events. Specifically, the federal Title VII and ADEA claims, like those claims brought in the State Action under NYCHRL, are all premised on an alleged hostile work environment and

discriminatory employment practices based on Plaintiff's age, race, national origin, and retaliation. Furthermore, the two suits also involve essentially the same issues of law. While NYCHRL is more liberally construed than its federal counterparts, *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013), there is substantial overlap between the elements of NYCHRL claims for discrimination, hostile work environment, and retaliation, on the one hand, and analogous claims under Title VII and ADEA, on the other. *See, e.g.*, *Humphries v. City Univ. of N.Y.*, No. 13-cv-2641 (PAE), 2013 WL 6196561, at *12 (S.D.N.Y. Nov. 26, 2013) ("Notwithstanding [NYCHRL's] more liberal standard of review, our consideration of claims brought under [NYCHRL] parallels the analysis used in Title VII claims." (citations and quotation marks omitted)); *see also Collins v. City of New York*, No. 15-cv-5008 (VEC), 2016 WL 127591, at *8 (S.D.N.Y. Jan. 11, 2016) ("The elements for retaliation under the ADEA . . . and NYCHRL are the same."). Furthermore, there is also a substantial likelihood that the State Action will dispose of Plaintiff's four claims brought under Title VII or ADEA in the Federal Action, since a victory for Defendant on Plaintiff's NYCHRL claims will necessarily require dismissal of Plaintiff's Title VII and ADEA claims, which represent the "floor below which the [NYCHRL] cannot fall." *Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 410 (2d Cir. 2015) (citation and quotation marks omitted). In other words, if Plaintiff cannot show a violation of the more liberal NYCHRL by Defendant in state-court, Plaintiff necessarily cannot successfully sue under its federal counterparts in this Court. Thus, because Plaintiff's claims brought under Title VII and ADEA in the Federal Action are parallel to Plaintiff's claims under NYCHRL brought in the State Action, the Court next turns to an analysis of the *Colorado River* factors.

## B. *Colorado River* Factors

### 1. Jurisdiction Over a Res

This first factor is inapplicable in light of the fact that this is not an *in rem* action and neither this Court nor the state court has obtained jurisdiction over a res. Accordingly, this weighs against abstention. *See Niagara Mohawk*, 673 F.3d at 101.

### 2. Convenience

With respect to the second factor, the federal forum is not any more or less convenient than the state forum for the parties, since the federal and state courthouses are mere footsteps from each other. Accordingly, this factor also cuts against abstention. *Village of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) ("[W]here the federal court is 'just as convenient' as the state court, that factor favors retention of the case in federal court.").

### 3. Piecemeal Litigation

"[B]y far the most important factor" driving *Colorado River* and its progeny is the "clear federal policy" of avoiding "piecemeal adjudication." *Millennium Drilling Co., Inc. v. Prochaska*, No. 14-cv-1985 (WHP), 2014 WL 6491531, at *4 (S.D.N.Y. Nov. 18, 2014) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16); *see also Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985) ("As in *Colorado River,* the danger of piecemeal litigation is the paramount consideration in this case."). That said, the mere existence of parallel federal and state suits does not, without more, warrant abstention, particularly where "the nature of the parallel actions is such that principles of res judicata and collateral estoppel should be effective to prevent inconsistent outcomes." *CVR Energy, Inc. v. Wachtell, Lipton, Rosen & Katz*, No. 14-

cv-6566 (RJS), 2014 WL 7399040, at *4 (S.D.N.Y. Dec. 29, 2014). Rather, abstention under *Colorado River* is appropriate "when the parties to the state and federal actions are 'not identical,'" thereby raising the "'possibility that the parties who are not bound by the prior judgment may cause inconsistent judgments in subsequent lawsuits.'" *Millennium Drilling Co.*, 2014 WL 6491531, at *4 (quoting *Shields*, 891 F. Supp. 2d at 582–83). In other words, as the Second Circuit has repeatedly recognized, "the primary context" warranting *Colorado River* abstention is where there is the "risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." *Niagara Mohawk*, 673 F.3d at 101–02 (citations and quotation marks omitted). This is because the possibility of "contradictory findings of liability" results in the very "friction between state and federal courts" that *Colorado River* abstention is intended to avoid. *De Cisneros v. Younger*, 871 F.2d 305, 308 (2d Cir. 1989) (citation and quotation marks omitted).

Here, the Court finds that there is a significant risk of inconsistent outcomes between the Federal Action and the State Action if it does not abstain. As stated earlier, a judgment in the State Action might have preclusive effect in the Federal Action, since a victory by Defendant on the NYCHRL claims in state court would necessarily preclude Plaintiff from claiming violations of Title VII and the ADEA here. *See Velazco*, 778 F.3d at 410 (recognizing that Title VII and ADEA represent the "floor below which the [NYCHRL] cannot fall"). At the same time, any judgment by this Court – in favor of either Plaintiff or Defendant – would not have *any* preclusive effect on the eight individual defendants in the State Action, who have not had the

opportunity to litigate in this forum.[6] *See West v. Ruff*, 961 F.2d 1064, 1066 (2d Cir. 1992) (concluding that the "full and fair opportunity to litigate" is a prerequisite for application of both res judicata and collateral estoppel). Thus, if the Federal Action proceeds and somehow resolves itself before the State Action, there is potential for precisely the sort of piecemeal litigation *Colorado River* abstention is designed to avoid. In other words, while there is the possibility that a state-court judgment could preclude claims brought in the federal forum, the reverse is not true. *Gen. Star Int'l Indem. Ltd. v. Chase Manhattan Bank*, No. 01-cv-11379 (AGS), 2002 WL 850012, at *7 (S.D.N.Y. May 3, 2002) (finding abstention appropriate where a state-court decision "could well preclude claims before this court, but the reverse is not true"), *aff'd*, 57 F. App'x 892 (2d Cir. 2003); *cf. De Cisneros*, 871 F.2d at 307–08 (affirming abstention in the situation where plaintiff might "prove [defendant's] liability in federal court – and then be able to use the judgment preclusively in state court – but . . . the inverse would not be true"). Accordingly, because of the potential for inconsistent and mutually contradictory determinations absent abstention, the third factor weighs heavily in favor of abstention.

### 4.  Order of the Actions and Relative Progress

There is no dispute that the state action predated the Federal Action by four-and-a-half years and the FAC by nearly five years. Nevertheless, the analysis under the fourth factor "turns not just on the sequence in which the cases were filed, but rather in terms of how much progress has been made in the two actions." *Niagara Mohawk*, 673 F.3d at 102 (citations and quotation marks

---

[6] Furthermore, there is the possibility that even more defendants will be added to the State Action, since, as discussed elsewhere, Plaintiff has also moved to add two more defendants, including Defendant's former president, John Sexton.  (State-Court Doc. No. 727.)

omitted). For the reasons set forth below, the Court concludes that this factor also weighs strongly in favor of abstention.

The parties in the State Action have engaged in extensive motion practice and appeals, produced voluminous discovery, and conducted numerous depositions, progressing the action well beyond the preliminary stages. Notwithstanding Plaintiff's numerous unsuccessful motions to compel discovery, to sanction Defendant, and to disqualify Defendant's attorneys (State-Court Doc. Nos. 11, 192, 387, 389, 420, 544, 641), Defendant has produced thousands of pages of documents in response to hundreds of document requests and interrogatories (Mem. 21). Even a cursory review of the docket sheet in the State Action (which has reached its *783rd* entry as of March 29, 2016) reveals how much farther the State Action has advanced in comparison to the Federal Action, which has had no other activity aside from the instant motion. Of course, this conclusion is unsurprising in light of the State Action's nearly five-year head start. Given the State Action's considerable progress relative to the Federal Action, the fourth factor very heavily favors abstention. *See, e.g.*, *Millennium Drilling Co.*, 2014 WL 6491531, at *5 (abstaining where thousands of documents had been exchanged and many depositions had taken place in parallel state-court suit); *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F. Supp. 2d 170, 192 (E.D.N.Y. 2012) (abstaining where the parties in parallel state-court suit, which had been commenced over four years earlier, had engaged in "extensive discovery" and motion practice); *Paul v. Raytex Fabrics, Inc.*, 318 F. Supp. 2d 197, 198 (S.D.N.Y. 2004) (abstaining upon finding that parallel state court action, which had commenced nine months earlier, had already proceeded into discovery).

### 5. Whether Federal Law Provides the Rule of Decision

The fifth factor under *Colorado River* looks to whether state or federal law applies to the merits of the case. *Niagara Mohawk*, 673 F.3d at 102. "When the applicable substantive law is federal, abstention is disfavored." *Id.* Here, even with the ERISA claims dismissed, four out of the five causes of action arise under federal law. This factor thus weighs against abstention, but it is not at all dispositive. *See, e.g.*, *Gen. Star Int'l Indem., Ltd.*, 57 F. App'x at 894 (affirming stay of civil RICO claim pursuant to *Colorado River*); *Paul*, 318 F. Supp. 2d at 198 (dismissing ADEA claim pursuant to *Colorado River*); *Garcia v. Tamir*, No. 99-cv-0298 (LAP), 1999 WL 587902, at *8 (S.D.N.Y. Aug. 4, 1999) (dismissing FLSA claim pursuant to *Colorado River*).

### 6. Adequacy of State Proceedings to Protect Federal Rights

The Court next considers "whether the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28. There is no reason to doubt that a state court could adequately protect Plaintiff's procedural and substantive rights under Counts I–IV, brought under Title VII and the ADEA. As noted above, these claims involve identical facts and similar issues to those claims already being heard in state court under the NYCHRL. Moreover, since state courts have concurrent jurisdiction over the Title VII and ADEA claims, *see Woodford*, 239 F.3d at 525, Plaintiff could have brought the same claims in state court, the forum he chose several years ago, *see* C.P.L.R. § 3025(b) ("A party may amend his or her pleading, or supplement it by setting forth additional or subsequent transactions or occurrences, at any time by leave of court," which "shall be freely given upon such terms as may be

just."). Indeed, there is no reason to doubt the longstanding "presumption that state courts are just as able as federal courts to adjudicate Title VII" and ADEA claims. *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 826 (1990). Thus, the sixth factor weighs in favor of abstention.

## C.   Analysis and Weighing of Factors

To recap, the Court concludes that two of the *Colorado River* factors are neutral, and so favor retention of jurisdiction, one factor weighs against abstention, and three factors strongly weigh in favor of abstention. Mindful of its "virtually unflagging obligation" to exercise its jurisdiction, *Colorado River*, 424 U.S. at 817–18, the Court nonetheless finds abstention warranted under the "exceptional circumstances" that are present here. In particular, the Court finds the fourth factor – the amount of progress in the State Action – to practically compel this result. As stated earlier, nearly twenty motions have been litigated in the State Action; thousands of pages of documents have been produced; and hundreds of interrogatories have been answered. By contrast, the Federal Action, filed nearly five years later, has not progressed beyond this motion. Much of the abstention case law involves federal suits that were brought months or even days after the state suit was initiated. *See, e.g., Paul*, 318 F. Supp. 2d at 198 (finding exceptional-circumstances test met where state court action had commenced nine months earlier and already proceeded into discovery). Thus, a situation in which a federal action is brought four-and-a-half years after a state action, which involves nearly identical issues and facts and has significantly progressed into discovery, is truly exceptional, and courts have not hesitated to abstain under similar circumstances. *See, e.g., Millennium Drilling Co.*, 2014 WL 6491531, at *5; *First Keystone Consultants, Inc.*, 862 F. Supp. 2d at 192–93.

The third and sixth *Colorado River* factors also weigh in favor of abstention. As the Second Circuit has repeatedly instructed, abstention is particularly appropriate where, as here, there is the possibility that a state-court judgment could have preclusive effect on the federal-court action, but the federal court's judgment would lack preclusive effect in the state court, thus resulting in friction between the state and federal systems. *See Niagara Mohawk*, 673 F.3d at 101–02; *Gen. Star. Int'l Indem. Ltd.*, 57 F. App'x at 894. Furthermore, there is no question that the state court is an adequate forum for Plaintiff's federal and NYLL claims.

In addition to the six factors assessed under the traditional abstention test, the Court notes another consideration that significantly favors abstention in this case: the "vexatious or reactive nature" of the Federal Action. *Moses H. Cone Mem'l Hosp.*, 460 U.S. 1 at 17 n.20. As the Supreme Court has instructed, this factor "may influence the decision whether to defer to a parallel state litigation under *Colorado River*," *id.*, and numerous courts in this circuit have followed this directive, *see Machat v. Sklar*, No. 96-cv-3796 (SS), 1997 WL 599384, at *9 (S.D.N.Y. Sept. 29, 1997) (Sotomayor, J.) (concluding that the "vexatious, reactive, and duplicative" nature of the proceeding "weighs in favor of . . . abstention"); *Best v. City of New York*, 654 F. Supp. 208, 211 (S.D.N.Y. 1986) (Weinfeld, J.) (explaining that "'the vexatious or reactive nature of either the federal or the state litigation' is a factor the court can consider when deciding whether to defer to state litigation" (quoting *Telesco*, 765 F.2d at 363)); *see also First Keystone Consultants, Inc.*, 862 F. Supp. 2d at 185 ("Courts may also consider the vexatious and reactive nature of either the federal or state litigation as part of its *Colorado River* analysis.") (citations and internal quotation marks omitted); *Garcia*, 1999 WL 587902, at *8 (noting that a "blatant attempt to

manipulate the concurrent system of jurisdiction is of great weight in this consideration of the vexatious or reactive nature of the action").

Based on the record before it, the Court finds Plaintiff's conduct in this matter to be highly vexatious.  Tellingly, after EEOC issued its right-to-sue letter on August 28, 2014 and closed its file on Plaintiff's charge before that body, Plaintiff was given the option of bringing his Title VII and the ADEA claims before a federal or state court. (Doc. No. 29-3.)  As stated earlier, Plaintiff could have moved to amend the State Action that had already progressed significantly to add these parallel claims.  *See Woodford*, 239 F.3d at 525; *see also* C.P.L.R. § 3025(b).  In fact, during the pendency of this motion, Plaintiff has moved to amend his complaint in the State Action to add new parties and claims.  (State-Court Doc. 727.)

And yet, Plaintiff did not attempt to add the Title VII and ADEA claims to his long-running State Action, opting instead to commence a wholly new action in federal court.  In light of Plaintiff's numerous failures in the State Action, the fact that he initiated a new suit in federal court gives rise to a reasonable inference that he was merely seeking to pit the state and federal judicial systems against each other, and hoping for a better outcome in the latter.  *See Telesco*, 765 F.2d at 363 (concluding that Plaintiff's bringing federal suit based on identical allegations "after he has suffered some failures in the earlier state court action," coupled with "the hostile history of the case[,] strongly indicate the vexatious nature of the litigation").

To be sure, Plaintiff's ERISA cause of action under Section 510 falls under exclusive federal jurisdiction.  However, that claim – which the Court has now found to be clearly untimely – was not included in Plaintiff's original complaint in this action on November 24, 2014, even though

Plaintiff claims to have learned of Defendant's ERISA violations nearly five months earlier, on July 30, 2014.  (FAC § 241.)  Instead, Plaintiff added his ERISA claim belatedly, in an amended complaint filed just a few weeks after Defendant expressed its intent to seek dismissal under *Colorado River*.  (Doc. Nos. 6, 12.)  Thus, Plaintiff's eleventh-hour addition of his ERISA claim suggests that he added this cause of action merely to stave off abstention.  *See Gen. Star. Int'l Indem. Ltd.*, 2002 WL 850012, at *10 ("The late addition of the RICO claim . . . strongly suggests that it is pretextual, designed to manufacture jurisdiction.").  Accordingly, the Court is "deeply concerned that [it] is being used as a tool of harassment," *Machat*, 1997 WL 599384, at *9 (Sotomayor, J.), which weighs heavily in favor of abstention.

In sum, while mindful of its "virtually unflagging obligation" to exercise jurisdiction, *Colorado River*, 424 U.S. at 817, the Court finds that, "after careful balancing of the important factors as they apply," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16, abstention is warranted under the truly exceptional circumstances present here.  Moreover, where, as here, "the movant has met its burden" of showing that abstention is warranted, "the *Colorado River* exceptional circumstances test makes no distinction as to whether a dismissal or stay is more appropriate."  *Cong. Talcott Corp. v. Roslin*, No. 95-cv-7698 (LAP), 1996 WL 499337, at *9 (S.D.N.Y. Sept. 4, 1996) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28; *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 n.1 (2d Cir. 1986)).  The Court thus exercises its discretion to dismiss Counts I–IV.

## IV. SUBJECT-MATTER JURISDICTION OVER COUNT V, THE NYLL CLAIM

In addition to his federal causes of action, Plaintiff also brings Count V, which

alleges violations of NYLL pursuant to the Court's supplemental jurisdiction. (FAC ¶ 6); *see also* 28 U.S.C. § 1367(a). Because, for the reasons discussed above, the Court has dismissed all of Plaintiff's federal claims, either for failure to state a claim or on abstention grounds, the Court declines to exercise supplemental jurisdiction over Plaintiff's NYLL claim. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) ("A district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage."). Although Defendant also urges the Court to dismiss Plaintiff's NYLL cause of action on additional grounds – namely, preemption, statute of limitations, and abstention (Mem. 10–12) – the Court need not reach these arguments because of its decision to dismiss for lack of subject-matter jurisdiction.

Accordingly, Plaintiff's claim brought under NYLL is dismissed without prejudice. *Siegel v. Apergis*, 610 F. App'x 15, 16 (2d Cir. 2015) ("[W]hen a court dismisses for lack of subject-matter jurisdiction, that dismissal must be without prejudice.").

## V. LEAVE TO AMEND

Plaintiff has requested that, in the event of dismissal, he be granted leave to amend his ERISA cause of action. (Opp'n at 3, 15.) Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." *McCarty v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Nevertheless, "it is within the sound discretion of the [court] to grant or deny leave to amend." *Id.*

As an initial matter, "where a plaintiff clearly has expressed a desire to amend, a lack of a formal motion is not a sufficient ground for a district court to dismiss without leave to amend." *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir.

2006). However, a court may deny leave to amend based on "undue delay, bad faith, [and] dilatory motive" of the plaintiff, or where "amendment would be futile." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). "[W]hile there is little law in the Second Circuit" regarding "what constitutes bad faith in the context of a motion for leave to amend a pleading," *On Track Innovations Ltd. v. T-Mobile USA, Inc.*, No. 12-cv-2224 (JCF), 2014 WL 406497, at *5 (S.D.N.Y. Feb. 3, 2014), the Second Circuit has recognized that a party's failure to include a proposed amended complaint with its request to amend "indicates lack of diligence and good faith," *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990). Moreover, a district court is under "no obligation" to grant leave to amend when the plaintiff offers merely "conclusory assertion[s]" that amendment would cure a complaint's deficiencies and "fail[s] to disclose what additional allegations [he] would make which might lead to a different result." *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004); *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53–54 (2d Cir. 1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied.").

Here, Plaintiff's wrongful termination claim is clearly time-barred; and Plaintiff has offered no new facts or arguments to suggest that amendment would be anything other than futile. *Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000) (noting that amendment is generally futile if claim is clearly barred by the applicable statute of limitations). Accordingly, the Court has little difficulty rejecting Plaintiff's request to amend his claim for wrongful termination under Section 510 of ERISA.

With respect to Plaintiff's 502(a)(1)(B) claim seeking unpaid benefits, Plaintiff references an email sent last July in which he was informed that "a number of adjuncts" may not have been paid the full amount of pension benefits. (Doc. No. 31 ¶ 5.) While such evidence may bolster his claim for unpaid benefits, Plaintiff nonetheless fails to point to any new facts regarding his failure to exhaust administrative remedies that "might lead to a different result." *Horoshko*, 373 F.3d at 249. In light of the fact that Plaintiff has already been granted leave to amend once, and has failed to enclose a copy of a proposed amended complaint, the Court concludes that Plaintiff's request for leave to amend should be denied. Nevertheless, the Court will dismiss Plaintiff's Section 502(a)(1)(B) claim without prejudice, in the event that he pursues administrative review under his plan and the claim is denied. *See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 560 F.3d 118, 124 (2d Cir. 2009) (noting, in a different context, that "a dismissal for failure to exhaust available administrative remedies should be 'without prejudice,'" since it "leaves the plaintiff free to return to the District Court after exhaustion of administrative remedies"). Accordingly, the Court denies Plaintiff's request for leave to amend his ERISA claims.

## VI. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is GRANTED. Specifically, the Court dismisses Plaintiff's ERISA cause of action for failure to state a claim, dismisses Plaintiff's Title VII and ADEA claims on abstention grounds, and dismisses Plaintiff's NYLL claim for lack of subject-matter jurisdiction. The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry 27, and to close this case.

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States District Judge

Dated: March 30, 2016
New York, New York

Plaintiff is represented by Jennifer L. Unruh, Esq., 30-14 29th Street, Apt. C1, Astoria, NY 11102.

Defendant is represented by Brian S. Kaplan and Evan David Parness of DLA Piper US LLP (NY), 1251 Avenue of the Americas, New York, NY 10020.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/29/16